Yes, Your Honor. I'm Kermit Waters on behalf of the appellate, Your Honor, and I'd like to reserve about ten minutes for co-counsel to reply. You'll watch your clock because... Yes, I will. Your Honor, if it pleases the Court, Nevada passed 295.012 to require ten percent of the registered voters in the previous general election to sign an initiative petition in order to get anything on the ballot in Nevada, and they required it in all of the petition districts. Now, currently the petition districts are defined as congressional districts. We now have four, and it's in a limbo because they're all litigating where they're going to be. The average citizen does not know what district they are in, and I don't know what district I'm in, and I'm pretty politically active. Okay. But, counsel, we have to deal with the record as it exists. I understand. I understand. But anyway, I'm trying to explain the unreasonable restraint on it. Our argument here today is that requiring all the districts to have ten percent in all the districts gives any one district the power to veto any initiative that they don't like, because you have to get ten percent in all of them. It's exactly the Udall v. Bowen case, except the dissent is the one I'm asking this Court to follow. And our facts is much stronger than they were in the Udall v. Bowen case. Why would we follow the dissent? Because the Judge Feigert says to allow one district to veto the other. Well, I know he agrees with you, but why would we go with the dissent? Well, Your Honor, because that's the fair way to do it, because it doesn't — in other districts, you have essentially violated the majority rule, because if we could have 60 percent of the people signed in three congressional districts, and hypothetically in Nevada, and one of them would defeat it, we don't have a homogeneous society down there, Your Honor. Well, that may be. But the issue is whether or not — I understand you're going on the principle that every voter has a vote. Right. And what you're suggesting is that now that they've modified it down from disproportionate population divisions to the congressional districts, which generally have roughly equivalent populations. We concede that the population will be equal, but it's not — but it's not equal when you have to get each one of them on the board. They've essentially taken the State and put four boxes in the State. And they're not saying — Three for now. Well, there's four now, Your Honor. They're in court now. But they're all — okay, three or four, but they have — But in a sense, you have to give them all. So essentially, they boxed them all and say, now you've got to get 10 percent in all of them. And the State will say it's because they require a modicum of support statewide. Three times this circuit has told the State of Idaho and Nevada that a modicum of support is not a compelling State interest. But are we using a compelling State interest standard of review for this where the populations are equal? Well, Your Honor — Weren't those cases where the populations weren't equal? That's true, Your Honor, and we'll concede that. But we're also saying because you require in all of them that one can veto the other, and that also violates equal protection. And it's an unreasonable First Amendment violation because it's essentially a restraint on free speech, because they don't need it. They're just doing it. This was put on by the mining industry. They wanted this passed to make it more difficult so you can't get initiative on essentially to regulate mining in any respect. That's what this is all about. They've done it three times now. And that's where we are. I forgot my clock. Where are we at? You're at 16 minutes. You're fine. You're good. All right. Now, that's why we say Judge Swigert got it right in the Udall v. Bowen case. That was a Fourth Circuit case. That was 37 — eight years ago. And we submit that the fairness is that we should be able to get 10 percent in any place in the State if we can get 10 percent. And to have one district, one congressional district, essentially been able to veto the others. So you're basically saying if they can get 10 percent of the what? We can get 10 percent, for example, in Clark County or Reno. We should be able to get 10 percent of the voters in the last election, all State voters. I'm not sure I understand the question. What if the requirement were that instead of — Previously. I'm sorry. Okay. You have your time. Don't let the clock drive your argument. Okay. Watch the clock, but don't get interruptive. Okay. So my question is, if the Nevada legislature said in order to get an initiative on the ballot, you had to get 10 percent of the voters statewide of — who voted in the last election. Okay. They could do that? Yes, they could. Okay. That was the rule before they passed this. Okay. So then if they subdivide it, you're saying that they can only subdivide it such that one — they can reduce, in effect, reduce the percentage of voters by — if they divide the state in half, it would only have to be the 10 percent of the voters in one of the two districts. Well, that would help. Yeah. And if they make it — if they divide it in thirds, as they did — You're making my day. Yes, you are. And then — right. So that's — you're saying that's the equal protection rule of law. That would make it better. I'm not — Well, no, I'm not talking about policy judgment. I'm talking about constitutional equivalency and what it takes to violate the Constitution. You may like it as a matter of policy. I understand. Okay. But what we're dealing with is only a constitutional issue. I understand. But is that — is not unreasonable burden? Modicrum is supposed to be a de minimis. That's the definition, as I understand. 10 percent is not de minimis. Well, how do we know that? I mean, how do we know it's a burden? Well, for example, you know, for example, if — if modicrum is defined as de minimis or as minimum de minimis, that's a half a percent or 1 percent. But 10 percent, that's not — that's not a modicrum, and that's not even the reason they passed it. They passed it to make it more difficult. Well, you just told me that if you divide the State, it makes it easier, so long as only you'll have to qualify in one district. But by reducing the districts, you're also reducing the number of voters that you have to get. Isn't that right? If we only had — Still 10 percent of — If we only had to get 10 percent in two districts, that would help. That would help. I still don't concede it wouldn't be unconstitutional because you still got the possible veto. But I'm saying that would help. Now, how does that square with the cases that allow supermajority votes — supermajority votes allow a minority to veto, in effect, exercise a veto power? Some of the States have passed that by Constitution. This restriction is not in the Constitution. Well, whether it's by Constitution or not, you're coming under the First Amendment, which is the Federal Constitution. I understand. I understand. So what's — maybe this would help. Can you tell us, on the veto theory, what's your best case? What should we be — you're saying it's Udall. The majority — the dissent in — Dissent in Udall. Any Supreme Court cases? The dissent. Yes, Your Honor. How about U.S. Supreme Court cases? Well, we got — you know, both Myers and Grant said that the enlistee process is core political speech. I understand that. Okay. But somewhere between there and Washington, we lost it. We're into the balancing test somewhere. It fell off the train somewhere. I don't know. If we use this core political speech, they can't make this fly, Your Honor. It won't take mustard if we have core political speech. Okay. May I? Yeah. You may say — or allocate time. No, I'm sorry. How — you're — I'm not sure how you're dividing your time. I was going to let him reply, Your Honor. Mr. Don Charest — Oh, I see. Okay. All right. But I don't want him — you know, reply is going to be reply, not introducing new issues that you wanted to raise affirmatively. Okay. Fine. Thank you, Your Honor. May it please the Court, Kevin Benson, Deputy Attorney General, on behalf of the With regard to the equal protection claim — well, actually, first, with regard to both claims, I'd like to remind the Court that this is a facial challenge. So the burden on the appellants is to show that these laws are unconstitutional in every instance. With regard to the equal protection claim, the fundamental problem with their — Counsel, let me — I'm sorry to interrupt, but counsel has represented to us that there are going to be four congressional districts. Is that something we should assume or take judicial notice of? Or is it in dispute? Or what do we do? The record before us was three congressional districts. That is correct, Your Honor. And the Census Bureau data shows that we will be getting a fourth congressional district. The lines have not yet been drawn. It's currently in litigation in State court. And meanwhile, the State court has not ruled the existing districts to be unconstitutional. So the three districts are still in effect unless and until — And should we — ultimately, are we assuming that even if the — when the four happen, it will still roughly reflect the equivalent population in each district? Yes. After the redistricting is complete, the population should be exactly equal in all four districts. Okay. Thank you. So as I was saying, the problem with their equal protection claim in this case, and why this case is distinguishable from the Idaho Coalition v. Behrs case, the cannot point to any identifiable class of voters who are being treated better or worse than anybody else. In this case, all of the districts are given exactly equal power. District 3 can veto districts 2 and 3 — 2 and 1, excuse me — and so forth with all of the districts. That was the distinguishing factor between this case and the all-counties rules. Under the all-county rules, on the face of the statute itself, you could tell that the least populated county, being Esmeralda, would have their votes counted more than any other voters in the state. Under this scheme, instead, because everybody's vote is counted the same, there is no vote dilution. The rule is not discriminatory. Strict scrutiny only applies after the court has already found the rule to be discriminatory. So what you're doing is you're letting a unit of voters veto districts 2 and 3. That's not the will of the other two or three units, are you not? In a hypothetical situation, it's possible that it could happen where you could fail to get enough signatures in all three districts. However, as I mentioned, that is a hypothetical situation. And on the record before this case, the propellants have not shown that that has ever happened in this case. And also, because this is a facial challenge, they not only have to show that it has, in fact, happened, they have to show that it will happen in every instance. And that they cannot do, because the rule itself is neutral. It doesn't cause any discrimination or vote dilution, because all of the districts have equal power. Now, if the, this is on signatures, right? That is correct. Okay, so if the ballot measure, if the initiative gets on the ballot, could the, could you require the vote to be a majority vote in each of the units? If there were a change to the Nevada Constitution, that could be required. However, that's not presently required. All right, so you're saying both the signature gathering and the actual vote itself. So even though a majority of the popular vote in Nevada, based on the, we'll take the two out of the three, taken all of the districts together as one statewide election, but you counted the fact that there was not a majority vote in one of the three districts, and that killed the passage of the initiative? You suggest that would be constitutional? As I understand your question, you are positing that we require a majority of signatures in each district? No, a majority of voters. Majority of voters. That a majority of votes. So when the, it qualifies, it's on the ballot, now the vote's held, statewide initiative, but when the votes are counted in, let's pick the one in the north, Nevada, votes against it, all the other two districts vote for it by a majority. Because it didn't get a majority in one of the districts, then it doesn't pass. In that case, if I understand your hypothetical correctly, I still do not think that it would be unconstitutional because it would essentially be a supermajority requirement in that case. And as the Gordon v. Lance case has made clear, a supermajority requirement that does not favor a discrete insular minority is not in and of itself unconstitutional. And this case, by contrast, by only requiring a 10 percent of signatures from each district, we're not even requiring a majority. We're requiring much, much less than that in each district. No, I understand. That's why I was asking the vote. I was going to the vote as opposed to the initiative. Correct. And so in that sense, the argument I take it would be that it's unnecessary because you're going to have a majority vote anyway statewide. But here that's not the case because we don't require a majority of the signatures. Well, it wouldn't even be — it could be a supermajority of — I mean, since you have roughly equal population, you could get a majority, a sizable majority in two out of the three, so it might rise to even — if one district, unless it gets over 50 percent, it might go down as low as — I'm just trying to think. I can't do the math, but it might be even more than, say, a 60 percent or 75 percent supermajority. Hypothetically, I'm not sure if my math works out. My understanding is that it would depend on if we have four congressional districts, then it would be a 75-25 percent, or now it's a 66-33. Okay. That's right. Okay. But as I mentioned, in the Gordon v. Lance case — That would be a pretty supermajority. It would be. And in the Gordon v. Lance case, you know, even that in and of itself is not unconstitutional. And additionally, this Court recognized in the Pest Committee case, citing the Eleventh Circuit case at Beadle, the right to make law directly through the initiative process is not a Federal constitutional right. No. But once you've got it, then you can't skew it. That is correct. Once the State has provided that, then we're obligated to provide it in a way that does not dilute the votes of any particular voters. And that's what we have accomplished here. In fact, we are following the suggestion of this Court, which was originally to use legislative districts. Congressional districts is conceptually the same by doing so because they are both based on equal population. Okay. With that, I'll turn briefly to the First Amendment claim instead. And again, this is a facial claim that they bring. And once again, here, strict scrutiny does not apply because there is no severe burden on their First Amendment rights. This Court recently discussed, again, in the Pest Committee case, the regulations of the State that control the mechanics of the initiative process do not impact core political speech. That's what we have, again, in this case, is we have a generally applicable, neutral regulation that goes to the mechanics of the process rather than interfering with the core political speech. It does not reduce the quantum of speech.  It does not limit the pool of potential circulators by, for example, prohibiting the payment of circulators, or by requiring them to be registered voters of the county or of the State, nor does it discourage circulators or affect the way they communicate one-on-one with potential signers by, for example, having them wear a name badge that says their name and says whether they're a volunteer or whether they're being paid. Those are all examples where either the U.S. Supreme Court or the Ninth Circuit has struck down rules as interfering with core political speech. In this case, the rule does nothing of the sort. So it does not impose a severe burden on First Amendment speech, and the district court was correct in applying the verdict balancing test rather than strict scrutiny. So you're really saying that the severe burden argument only applies to the logistics of getting the signatures through all of those counties in the second district? No. I'm saying it only applies to rules that burden the exchange of ideas between the circulator and the potential signer as opposed to logistics, because every initiative petition will require some expenses, some logistics. And as I mentioned, the State, because it's a State-created right, the State is under no obligation to make it easy to get an initiative on the ballot. So just the fact that it's not simply easy to do and that it's not the easiest possible, most user-friendly and efficient way that is possible does not render it unconstitutional. And that's why the distinction that the Pest Committee brought forth between the mechanics of the process, which may be difficult, and the actual core political speech that would convince a potential signer to sign the petition, that's why that is a useful distinction in these cases, because otherwise, to say it's not a Federal right becomes meaningless, because you would be able to bootstrap that into any First Amendment claim from then on forth. And additionally, I would like to address the appellant's claim that the district court did not properly give weight to the evidence that they submitted to the district court on a summary judgment motion. This was granted on summary judgment. Both sides did motions for summary judgment. And again, it's been well established in this Court that conclusory, self-serving affidavits are not sufficient to create a genuine issue of material fact on summary judgment. And that is all that they have presented to the district court in this case. Particularly, the evidence that they presented in that affidavit had to do with the Pest Commission, which was to prevent employers from stealing tips, which has to do with a policy by the Wynn Resort Casinos in Las Vegas, whereby dealers have to share their tips with their supervisors. This was a petition that was circulated in 2008. However, the all districts rule was not enacted until 2009. And as they discussed, it is true, as they state in their affidavits, that no initiatives qualified for the ballot in 2008. But in the Marijuana Policy Project v. Miller case, it was decided in 2008, and that struck down the all counties rule. So at the time, there actually was no geographical distribution requirement at all in effect for the State of Nevada. So the failure of those petitions to qualify for the ballot could not have possibly been caused by any geographic rule, let alone the all petition district rule. The only evidence that they have presented in this case that might even be relevant is the statement in Mr. Bedillo's affidavit that some of their volunteers were worried that maybe they might not be able to recruit volunteers in northern Nevada because the policy of the tip sharing was not occurring in the casinos up there. And again, even giving them the most liberal inference, the evidence still fails to present any idea that this is unconstitutional, that this imposed a severe burden on their rights, because they failed to show that they did have enough support, even in Las Vegas. They failed to show that CD2, because the policy was not in effect there, vetoed their ability to get this on the ballot. Instead, there was no geographical requirement at all in place at the time, and yet they still failed to qualify. So that shows that they didn't have the majority support necessary even in the southern part of the State in order to qualify their initiative. So in short, their evidence does not rise to the level to rule this law facially unconstitutional in every instance under the First Amendment. Again, that is also the reason why the district court correctly applied the balancing test instead of the strict scrutiny test. If the Court does not have any questions, I will submit. Thank you. Thank you. Good morning, Your Honor. My name is Don Cherez, and I'm co-counsel with Mr. Waters. And I guess I'd like to start by answering the question that you asked, Mr. Waters. What Supreme Court case do you rely on to say that the all-petition district's rule is unconstitutional? And basically, I would start with Baker v. Carr from 1962. I would go with Reynolds v. Sims. I would go with Gray v. Sanders, because essentially there, back in the 1960s, they said every man should have one man, one vote. Of course, we now call that one person, one vote. And I think as you were doing the math in your head, you realized under Nevada's current scheme, the voters in 25 percent of the state can override the will of the voters in 75 percent of the state. And let's just assume you get 100,000 signatures in Congressional District 1, 100,000 signatures in Congressional District 2, 100,000 signatures in Congressional District 3, but you only get 9 percent of the voters to sign on to your initiative petition. In the 4th Congressional District, you cannot get your initiative petition on the ballot. And we don't have four. Well, yes, we do. I think the State conceded that, that there is a 4th Congressional District that has been allocated to the State of Nevada. But even if we don't have one-fourth as being able to override the will of the other three-fourths, one-third being able to override the will of the other two-thirds, it's essentially 65, 66, 67 percent. The same percentage that this Court was so concerned about in the Idaho Coalition case. And I think what's happening is the focus, we've gotten away from the original concept. It's one man, one vote, equality of vote. And I think that we need to answer footnote two in the Idaho Coalition case, where the Court said, yes, the counties have different sizes, but if you would have used something like legislative, state legislative districts, it would have been more fair, because they're more evenly divided. And my basic premise to the Court is, yes, if we would have used the same formula as they used in Idaho, 50 percent of the state legislative districts, 50 percent of the state Senate districts, 50 percent of the congressional districts, maybe we would have nothing to be arguing about. But to require 100 percent of the districts, and even the Secretary of State in their own brief mentioned the original bill, Senate Bill 212, was to require 10 percent of the signatures in all 42 assembly districts in the state of Nevada. That would give power to one assembly district to override the will of the other 41 assembly districts. Now, that would obviously be a violation of one man, one vote. And so, right now with this ambiguous concept of petition district, I think the state of Nevada legislature is waiting to see what is this Court going to do. Because if they uphold the current plan with these congressional districts, then they're going to say, we've been given a green light by the Ninth Circuit. You know, it does not violate, I mean, the unanimity rule does not violate the one man, one vote rule. And they're going to open the door, and next time we'll be here in three to five years arguing, oh, well, they went through with the assembly district that they originally planned. So, for me, that's the key concept here. I think the other thing is when they rely on the Libertarian Party versus Bond, the Missouri plan, and the Libertarian Party versus Davis, those were minimal burdens. In the Virginia plan, they only required 200 signatures in each congressional district. Here we're requiring 25 to 30,000 signatures in each congressional district. So, to me, to gather 200 signatures, I can do that in one afternoon at Costco, and I would agree, that is a de minimis burden. I think the other thing about the Missouri plan is they required 1 percent of the people who voted, yes, they did have a unanimous all seven or all nine congressional districts, but it was the 1 percent in every congressional district, or 2 percent in 50 percent of the congressional districts. Again, to me, the burden is not severe. So, even if this Court chooses to do a balancing test, you have to balance. What was the burden in the Bond case? What was the burden in the Missouri case or the Virginia case? Those were not severe burdens. Yet, here, each district, by each district having the same amount of power, it does give one district the ability to override the vast majority of the rest of the state. And I think that that's what the U.S. Supreme Court was concerned about in Moore v. Ogilvie. Fifty percent, again, a 50 percent rule, 50 percent of the counties in Illinois, what this Court looked at, 50 percent of the counties in Idaho, 13 out of 17 counties in Nevada. So, you're using fractional formulas, and the courts are saying, because you keep on violating counties, which are obviously of unequal sizes, it's apparent, apparent that, you know, the one-person, one-vote rule is being violated. So, the key thing here, Your Honor, or Your Honors, are what is equal protection? And to me, it's simple algebra. Look at the fractions. Maybe simple math. I'm not sure. Look at the fractions. One-fourth, less than 10 percent of the people in one-fourth of the districts can override the will of the vast majority of the rest of the state. And so, as Mr. Waters was mentioning, to a certain degree, this mocks the whole concept of majority rule. I mean, to accept the government's argument … Well, what about the supermajority cases, then? You say it mocks it, but we don't have a constitutional principle that says under no circumstance can you exceed 51 percent, you know, go beyond requiring a simple majority. Well, Your Honor, my basic response would be, I think you're referring to Gordon v. Vance, and those were, as I understand it, requiring before you could have raised the taxes, the voters, 60 percent of the voters would have to be in agreement, et cetera. So I think that in those particular situations, it's just by analogy the same way we use for a constitutional amendment. Two-thirds of Congress or three-fourths of the state legislatures, sometimes they want to make things difficult. But I don't believe that making it difficult to get an initiative petition on the ballot should be a severe burden. I think a minimum burden is okay. Pardon? Now we're shifting between equal protection and First Amendment. So let's talk about stay on equal protection. You're arguing Reynolds and that line of cases, but it also … there's part of that line says you can have supermajority requirements, which you're acknowledging, but said, well, that's okay for some purposes, but not for initiatives. Well, I mean, to be honest with you, Your Honor, I believe that this is a court of appeals. I do believe that you are allowed to consider policy considerations, and I frankly believe that … You haven't been watching the Senate confirmation. Well, no, Your Honor. I watched the news this morning, and I watched where the President and the Speaker of the House couldn't agree on what date the State of the Union or joint address to Congress should be. And I see over and over again, people in this country are upset at their elected leaders. And I believe that in many ways, it's important to try to protect the right of people to make their own legislation. I mean, we're in the year 2011. I believe 100 years ago, California had a governor by the name of Hiram Johnson, a progressive. Well, we have the initiative process in California. We're very familiar with the initiative process. But, Your Honor, the same reasons that existed, you know, the response to the robber barons and their control of the California legislature and the Nevada legislature gave rise to the ability or the desire of people to have their own power to be able to say, we need some checks and balances. And I think that's where we've come to again today. If we get into that morass, believe me, there's lots of arguments on both sides of that one. You know, there's movement in California to put limits on its initiative process because constitutional amendments have tied up so much of the budget of the legislature, direct democracy versus representative democracy. But that's a policy debate, a political debate, and we're not going there. What we're trying to find out is whether under the Constitution, there are limitations and we have to grapple with what the case law is that we have. So I don't think you should expect out of us, not at least intentionally by us, deciding to resolve the political controversies. We have enough trouble with what we've got. Well, in essence, Your Honor, again, I would summarize with this is about simple mathematics. And right now, the formula is one-fourth of the voters have the ability to override the other three-fourths of the voters. Well, that's succinctly stated, and I appreciate that. All right. Thank you very much. We'll submit the case. All right. Well, thank you. Thank you both. We appreciate the arguments. And this is a very interesting case for lots of reasons. Case is submitted.
judges: Mills, Fisher, Rawlinson